UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

JEFFREY LIPSHIRES, SARA DONNELLY
and ANSELMO TONI

        Plaintiffs,

                                C.A. No

BEHAN BROS. INC. RETIREMENT PLAN,
BEHAN BROS., INC., MICHAEL J. BEHAN
JR. and WILLIAM P. BEHAN

        Defendants.

## COMPLAINT

NOW COME Plaintiffs Jeffrey Lipshires, Sara Donnelly and Anselmo Toni (collectively

"Plaintiffs") and hereby submit their Complaint against the Behan Bros, Inc. Retirement Plan;

Behan Bros., Inc., Michael J. Behan Jr. and William P. Behan (collectively the "Trustees") as

follows:

## PARTIES

1. Plaintiff Jeffrey Lipshires ("Lipshires") is a resident of Rhode Island.

2. Plaintiff Sara Donnelly ("Donnelly") is a resident of Rhode Island.

3. Plaintiff Anselmo Toni ("Toni") is a resident of Connecticut.

4. Defendant Behan Bros., Inc. ("Behan Bros.") is a Rhode Island corporation with a
   principal place of business in Middletown, Rhode Island.

5. The Behan Bros, Inc. Retirement Plan is a employee benefit plan sponsored,
   maintained and administered in Rhode Island by Behan Bros.

6. Upon information and belief, Michael J. Behan is a resident of Rhode Island and is a
   Trustee of the Plan.

7.  Upon information and belief, William P. Behan is a resident of Rhode Island and is a Trustee of the Plan.

## JURISDICTION

8.  Federal question jurisdiction based upon 28 U.S.C. §1331 exists because Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq.

9.  As an employee benefit plan sponsored, maintained and administered within the State of Rhode Island, the Plan is subject to the personal jurisdiction of this Court.

10. Behan Bros. is a Rhode Island corporation with a principal place of business in Rhode Island and is subject to the jurisdiction of this Court.

11. Upon information and belief, Michael Behan is a resident of Rhode Island and is subject to the jurisdiction of this Court.

12. Upon information and belief, William Behan as a resident of Rhode Island is subject to the jurisdiction of this Court.

## FACTS

13. The Plan is an employee benefit plan as that term is defined by ERISA, 29 U.S.C. §§1001 et seq.

14. The Plan is a 401k profit sharing plan for eligible employees of Behan Bros.

15. Behan Bros. is a construction company located in Middletown, Rhode Island and is the named Plan Administrator for the Plan.

16. Plaintiffs are former employees of Behan Brothers and are participants in the Plan.

17. The Plan's assets are pooled together in a trust fund (the "Trust Fund") held by the Plan.

18.    Michael Behan and William Behan are the named Trustees of the Trust Fund.

19.    The Trustees are also participants in the Plan.

20.    Upon information and belief, at least seven members of the Behan family are

participants in the Plan.

21.    Investment of the pooled assets in the Trust Fund is managed by Washington Trust

Bank. The Plan does not provide for participant direction of investments.

22.    Pursuant to the terms of the Plan, each participant's 401k account is the balance of

that participant's interest in the pooled Trust Fund.

23.    Abacus Benefits Consultants, Inc. ("Abacus") is a third party administrator of the

Plan.

24.    The Summary Plan Description ("SPD") provides: "You are entitled to receive a

Distribution from your Account after you terminate employment."  A true and

accurate copy of the SPD is attached hereto as **EXHIBIT A**.

25.    The SPD further provides:

> <u>Distribution for Reasons Other Than Death</u> If you become entitled
> to receive your benefit for any reason other than death your
> Account will be distributed in a lump sum payment. This is your
> normal form of payment. Payment of your vested account may
> start. Distributions may be made at the Participant's election as
> soon as administratively feasible after the Participant has incurred
> a 1-Year Break In Service.

26.    The SPD provides that Accounts are valued as of the last day of the Plan Year.

27.    Pursuant to the terms of the Plan, the last day of the Plan Year is December 31. A

true and accurate copy of the Plan is attached as **EXHIBIT B**.

28.    The SPD provides that:

> The Plan Administrator may, in its sole discretion, declare a
> special Valuation Date for that portion of the Plan that is not daily-

valued in extraordinary situations to protect the interests of
Participants in the Plan or the Participant receiving the distribution.
Such extraordinary circumstances include a significant change in
economic conditions or Market Value of the Trust Fund.

29.    In May 25, 2018, Lipshires ceased employment with Behan Bros.

30.    On August 15, 2018, Toni ceased employment with Behan Bros.

31.    On September 7, 2018, Donnelly ceased employment with Behan Bros.

32.    On May 25, 2019, Lipshires reached his 1-Year Break in Service. Pursuant to the
       terms of the Plan, as of May 2019, Lipshires could have requested a lump sum
       distribution of his 401k account, which would have been valued as of December 31,
       2018.

33.    On or about August 15, 2019, Toni reached his 1-Year Break in Service. Pursuant
       to the terms of the Plan, as of August 15, 2019, Toni could have requested a lump
       sum distribution of his 401k account, which would have been valued as of as of
       December 31, 2018.

34.    On or about September 7, 2019, Donnelly reached her 1-Year Break in Service.
       Pursuant to the terms of the Plan, as of September 2019, Donnelly could have
       requested a lump sum distribution of her 401k account, which would have been
       valued as of as of December 31, 2018.

35.    In or about February 28, 2019, Lipshires contacted John Pursche of Behan Bros.
       ("Pursche") about rolling over the balance of his 401k account. He inquired about
       how the termination balance would be computed. A true and accurate copy of
       Lipshires' February 28, 2019 email is attached as **EXHIBIT C.**

36.    In the Administrative Information section of the SPD, Pursche is named as the
       email contact for the Plan Administrator, Behan Bros.

4

37. Pursche responded on March 9, 2019 by providing to Lipshires a statement of his 401k account as of December 31, 2018. A true and accurate copy of John Pursche's March 9, 2019 email is attached as **EXHIBIT D**.

38. Purshe advised Lipshires that:

> Your 1-year Break in Service will be in May of 2019 and at that time based on the plan documents you can receive your distribution from the 401k Plan *based on the annual valuation statement of 12/31/2018*. This is how *all distributions* have been handled for *all participants* that have terminated employment. [Emphasis added].

39. Pursche further advised Lipshires that "If the market is up from 12/31/2018 you also have an option to keep the funds in the Plan and take your distribution at a later date."

40. Lipshires responded by email dated March 11, 2019. He specifically inquired about the possibility of a special valuation. Lipshires noted that the stock market in March 2019 had been as high as 15% above the December 31, 2018 value and that such market volatility that would support a special valuation to reflect increased values in the 401k accounts. A true and accurate copy of Lipshires' March 11, 2019 email is attached as **EXHIBIT E**.

41. Pursche represented to Lipshires that a special valuation could not be issued under the terms of the Plan.

42. Absent a special valuation, pursuant to the terms of the Plan, the next valuation date for the 401k accounts would have been December 31, 2019.

43. In reliance on the Plan's representations about the special valuation, Plaintiffs elected not to take their 401k account distributions at that time and to wait until the December 31, 2019 valuation.

44.   On or about January 3, 2020, Lipshires promptly emailed Pursche and requested that Plaintiffs' 401k account balances be transferred to their current 401k plans. A true and accurate copy of the January 3, 2020 email from Lipshires to Pursche is attached as **EXHIBIT F**.

45.   Pursche responded in pertinent part:

> As soon as the year end valuation and statements are prepared by Abacus, I will forward the paperwork and the statements. This hopefully will be done by mid-March. I will forward the paper work to each individual and then they can complete the paperwork and return to me.

A true and accurate copy of Pursche's January 3, 2020 email to Lipshires is attached as **EXHIBIT G**.

46.   Pursuant to the terms of the Plan, the valuation date for Plaintiffs' 401k accounts as of January 2020 would have been be the last day of the Plan Year, or December 31, 2019.

47.   On March 3, 2020, Lipshires followed up with an email to Pursche regarding Plaintiffs' request to rollover their 401k account balances. A true and accurate copy of Lipshires' March 3, 2020 email to Pursche is attached as part of **EXHIBIT H**.

48.   Again, Pursche stated that the valuation statements were not ready and that they would not be available until March 15, 2020. A true and accurate copy of Pursche's March 3, 2020 email to Lipshires is attached as part of **EXHIBIT H**.

49.   Lipshires requested that Mr. Pursche "forward the paperwork for transferring in the meantime…" A true and accurate copy of Lipshires's March 3, 2020 email to Lipshires is attached as part of **EXHIBIT H.**

50.   By email dated March 10, 2020, Donnelly followed up on the transfer paperwork.

51. When there was no response, Lipshires followed up again by email to Pursche dated March 12, 2020. He stated "Please forward us the paperwork so that we can prepare it. We would expect that you will have the valuations by tomorrow since the 15th is over the weekend."  A true and accurate copy of Lipshires' March 12, 2020 email to Pursche is attached as part of **EXHIBIT I**.

52. When Lipshires received an automatic response from Pursche indicating that he was on vacation, Lipshires reached out to Jamie Cruz, the office manager at Behan Bros. He asked Jamie to "please forward to us the required transfer paperwork as well as the Abacus statements for Anselmo, Sara and me…" A true and accurate copy of Lipshires'  March 12, 2020 email to Jamie Cruz is attached as part of **EXHIBIT I**.

53. Jamie Cruz responded: "John [Pursche] is currently away on vacation. We haven't received the statements from Abacus yet, and will send them when we do. John can get the transfer paperwork over to you when he returns." A true and accurate copy of Cruz's March 12, 2020 email to Pursche is attached as part of **EXHIBIT I**.

54. Lipshires responded by email dated as follows:

> Jamie I appreciate that John is away but that should not be a roadblock to forwarding the paperwork required to complete to make the final transfer…

   A true and accurate copy Lipshires' March 12, 2020 email to Jamie Cruz is attached as part of **EXHIBIT I**.

55. Tish Behan, who works in Human Resources at Behan Bros. and is married to Michael Behan, responded by email later that day that "We are working on it." A true and accurate copy Tish Behan's' March 12, 2020 email to Lipshires is attached as part of **EXHIBIT I**.

56.   Between January 2020 and mid-March, 2020, the COVID-19 crisis erupted, causing a sudden drop in the stock market.

57.   The Plan finally responded to Lipshires' numerous requests by letter dated March 16, 2020.

58.   Rather than providing the paperwork for distribution, Michael Behan, Trustee of the Plan, advised in a letter to participants that Behan Bros., at the recommendation of Abacus, the Plan would be implementing a Special Valuation Date as of April 30, 2020 (the "Special Valuation"). According to the letter, revised valuations pursuant to the Special Valuation would be issued 30 days later. A true and accurate copy of Michael Behan's March 16, 2020 letter to participants is attached as **EXHIBIT J**.

59.   By memorandum dated March 25, 2020, Michael Behan provided Plaintiffs with their completed December 31, 2019 valuations.  Behan noted, however, that "[I]t has come to our attention that we will be receiving distribution requests and due to the unprecedented and extraordinary change in the market valuation due to the Coronavirus pandemic, we have issued a Special Valuation Date." A true and accurate copy of Michael Behan's March 25, 2020 memorandum is attached as **EXHIBIT K**.

60.   As a result of the unreasonable delay by the Plan and Behan Bros. in issuing the December 31, 2019 valuations, Plaintiffs were forced to wait until March 2020 to obtain their December 31, 2019 valuations.

61.   When the December 31, 2019 valuations were finally issued at the end of March, the Trustees preemptively declared the Special Valuation and deprived Plaintiffs of

any opportunity to have their 401k accounts distributed at their December 31, 2019 value.

62.  Plaintiffs had no choice but to either treat the March 16, 2020 and March 25, 2020 communications from Michael Behan as either a denial of their request for their 401k account distributions valued as of December 31, 2019 or to proceed as if their request for their 401k account distributions had been "deemed denied" pursuant to ERISA.

63.  By letter dated April 7, 2020, Plaintiffs appealed the Plan's decision to issue the Special Valuation. Plaintiffs explained their efforts to obtain their 401k account distributions based on their December 31, 2019 value beginning in January 2020. They demanded a distribution of their 401k accounts valued as of December 31, 2019, not April 30, 2020. A true and accurate copy of Plaintiffs' appeal letter is attached as **EXHIBIT L**.

64.  By letter dated April 22, 2020 from Michael Behan, the Plan denied Plaintiffs' appeal.  A true and accurate copy of the April 22, 2020 denial letter from the Plan is attached as **EXHIBIT M**.

65.  In his letter, Michael Behan states "I was aware in January 2020 that Claimants wished to distribute their 401k balances to a new 401k Plan."

66.  He further states that "a distribution from the Plan is not administratively feasible until year end account valuations have been provided" and that Abacus did not provide those valuations until March 24, 2020.

67. He further states that the Plan Administrator determined that in the interest of the Plan participants, a Special Valuation Date should be declared in order to recognize the "recent market changes and treat all participants equitably."

68. The denial letter further indicates that "The Plan will proceed with the Special Valuation Date of April 30, 2020 and value the Claimants' accounts according to that valuation."

69. Plaintiffs have exhausted their administrative remedies under the Plan.

70. As of April 30, 2020, the Dow Jones Industrial Average had dropped 14% while the S&P 500 had dropped 9%.

71. By letter dated May 13, 2020, the Plan informed Lipshires that pursuant to the Special Valuation, his 401k account distribution would be $269,257.65.

72. The December 31, 2019 value of his 401k account was $293,715.94.

73. The Special Valuation has caused a $24,458.29 decrease in Lipshires' 401k account distribution.

74. By letter dated May 13, 2020, the Plan informed Donnelly that pursuant to the Special Valuation, her 401k account distribution would be $244,053.47.

75. The December 31, 2019 value of her 401k account was $266,222.32.

76. The Special Valuation caused a $22,168.85 decrease in Donnelly's 401k account distribution.

77. By letter dated May 13, 2020, the Plan informed Toni that pursuant to the Special Valuation, his 401k account distribution would be $92,119.01.

78. The December 31, 2019 value of Toni's 401k account was $84,448.09.

79.    The Special Valuation caused a $7,670.92 decrease in Toni's 401k account distribution.

80.    On May 26, 2020, Lipshires, Donnelly and Toni requested their 401k account distributions valued as of April 30, 2020 without prejudice or waiver of their rights to seek additional amounts owed pursuant to the terms of the Plan.

81.    On or about June 3, 2020, the Plan sent Plaintiffs their 401k account distributions valued as of April 30, 2020.

**COUNT I**

**WRONGFUL DENIAL OF BENEFITS PURSUANT TO 29 U.S.C. § 1132(A)(1)(3) AGAINST DEFENDANTS THE PLAN AND BEHAN BROS.**

82.    Plaintiffs incorporate and reallege the previous paragraphs as if set forth fully herein.

83.    Plaintiffs requested their rollover paperwork so that they could effectuate their 401k account distributions in January 2020.

84.    The Plan advised Plaintiffs that they would have to wait until March 2020 to request their 401k account distributions because the December 31, 2019 valuations would not be completed by Abacus until then.

85.    Plaintiffs requested numerous times that, at a minimum, the requisite distribution forms be provided to them in advance of the issuance of the December 31, 2019 valuations.

86.    The Plan unreasonably refused to provide the distribution forms to Plaintiffs.

87.    The Plan and Behan Bros. had a fiduciary duty to timely issue year end valuations to participants, including Plaintiffs.

88. The Plan and Behan Bros. did not produce the December 31, 2019 valuations until March 24, 2020.

89. The Plan and Behan Bros. unreasonably delayed the issuance of the December 31, 2019 valuations and payment of Plaintiffs' 401k account distributions.

90. Then, before the December 31, 2019 valuations were even issued and before Plaintiffs were even given their distribution forms, the Plan preemptively declared a Special Valuation and applied it to reduce Plaintiffs' 401k account distributions.

91. As a result of unreasonable delay by the Plan and Behan Bros. in issuing the December 31, 2019 valuations, Plaintiffs have suffered losses to their 401k accounts as a result of the coronavirus pandemic and have now been unfairly subjected to the Special Valuation.

92. As a result of the April 30, 2020 Special Valuation, Lipshires' 401k account distribution decreased by $24,458.00.

93. As a result of the April 30, 2020 Special Valuation, Donnelly's 401k account distribution decreased by $22,168.85.

94. As a result of the April 30, 2020 Special Valuation, Toni's 401k account distribution has decreased by $7670.92.

95. It was administratively feasible for the Plan and Behan Bros. to issue the December 31, 2020 valuations within 30 days of December 31, 2019.

96. In issuing notice of the Special Valuation, the Plan and Behan Bros. advised that they would issue the Special Valuation to participants within 30 days.

97. In fact, the Plan and Behan Bros. were able to issue the Special Valuation within thirteen days of April 30, 2020. This is in stark contrast to the year end valuations, which for some inexplicable reason took almost three months to be issued.

98. It was thus administratively feasible for the Plan and Behan Bros. to promptly issue the December 31, 2019 valuations to Plaintiffs and to distribute to Plaintiffs their 401k accounts in January 2020 at their December 31, 2019 values.

99. The delay in providing the valuations and the resulting delay in distributing Plaintiffs' 401k accounts was unreasonable, unfair, arbitrary, capricious and in violation of the terms of the Plan.

100. The Plan and Behan Bros. are subjecting Plaintiffs' distributions to the Special Valuation notwithstanding the fact that, according to Pursche, the last day of the prior Plan Year is the date by which "*all distributions*" have been valued for "*all participants* that have terminated employment."

101. The Plan and Behan Bros. have unreasonably, arbitrarily and capriciously applied the Special Valuation to Plaintiffs' distributions in violation of the terms of the Plan.

102. The Plan and Behan Bros. have unreasonably, arbitrarily and capriciously prevented Plaintiffs from obtaining the full value of their December 31, 2019 401k account distributions in violation of the terms of the Plan.

103. Plaintiffs are entitled to the December 31, 2019 value of their 401k accounts pursuant to the terms of the Plan.

104. Behan Bros., as Plan Administrator, is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

105. Behan Bros. has an actual conflict of interest in that it adjudicates claims under the Plan and also pays benefits pursuant to the Plan.

106. Plaintiffs' 401k accounts represent a substantial portion of the assets of the Trust Fund under the Plan.

107. It is in Behan Bros.' financial interest to minimize the amount of Trust assets distributed to Plaintiffs from the pooled Trust Fund.

108. The Special Valuation was improperly motivated by Behan Bros. financial self-interest.

109. Behan Bros. is using the coronavirus pandemic as a pretext to reduce Plaintiffs' distributions and to preserve Trust Fund assets.

110. In light of Behan Bros.' direct conflict of interest, its decision to deny Plaintiffs the December 31, 2019 value of their 401k accounts should be subject to a *de novo* standard of review.

111. The decision to deny Plaintiffs the December 31, 2019 value of their 401ks was incorrect, unreasonable, arbitrary and capricious and in violation of the terms of the Plan.

112. As a result of the unreasonable, arbitrary and capricious conduct of the Plan and Behan Bros., Plaintiffs have been damaged.

113. Pursuant to 29 U.S.C. 1132(a)(1)(b), Plaintiffs are entitled to distribution of their 401k accounts valued as of December 31, 2019.

## COUNT II

### BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. § 1132(A)(3) AGAINST TRUSTEE DEFENDANTS MICHAEL BEHAN AND WILLIAM BEHAN

114. Plaintiffs incorporate and reallege the previous paragraphs as if set forth fully herein.

115. The Trustees are fiduciaries of the Plan and owe a fiduciary duty to Plaintiffs.

116. Plaintiffs' 401k accounts represent a substantial portion of the assets of the Trust Fund under the Plan.

117. As fiduciaries of the Plan, particularly where the Trust Fund assets are pooled, the Trustees are required pursuant to 29 U.S.C. § 1104(a)(1) to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries.

118. Upon information and belief, the Trustees are participants in the Plan.

119. Upon information and belief, at least seven members of the Behan family are also participants in the Plan.

120. The Trustees have a conflict of interest in that they are participants in the Plan and are, therefore, financially motivated to maximize their own 401k accounts as well as those of their family members.

121. In March 2019, when Lipshires inquired about a special valuation that would increase the distribution to Plaintiffs, he was told it could not be accomplished. He was advised by the Plan that that if the market was up at a later date, he could wait to take his 401k account distribution.

122. In reliance on these representations, Plaintiffs opted to wait until the December 31, 2019--the next valuation date when the market was up--to request their 401k distributions.

123.  On January 3, 2020, Lipshires promptly requested the distribution forms on behalf of all Plaintiffs.

15

124. As such, the Trustees were on notice that Plaintiffs were seeking distributions of their 401k accounts as early as January 3, 2020.

125. On January 3, 2020, Plaintiffs' 401k account distributions would have been valued as of December 31, 2019.

126. The Trustees have breached their fiduciary duties by unreasonably delaying in providing the requisite forms and December 31, 2019 valuations to Plaintiffs.

127. The Trustees have breached their fiduciary duties to Plaintiffs by preemptively declaring a Special Valuation before the December 31, 2019 valuations were even issued to Plaintiffs and depriving them of any opportunity to recover the December 31, 2019 value of their 401k accounts.

128. The Trustees have further breached their fiduciary duties by arbitrarily employing the special valuation mechanism to serve their individual financial interests.

129. Plaintiffs' shares of the pooled Trust Fund comprise a significant portion of the Trust Fund's assets.

130. In March 2019, when the market was up 15% over December 31, 2018, the Trustees did not issue a Special Valuation, presumably because it did not serve the Trustees' financial interests to distribute a higher value of trust assets to Plaintiffs.

131. In 2020, however, with the Dow Jones Industrial Average down 14% and the S&P 500 is down 9%, the Trustees are using the special valuation because of "market volatility."

132. The market fluctuation between December 2018 and March 2019, however, was greater than the current 14% market fluctuation, yet the Trustees refused to issue a special valuation in March 2019.

133. The Trustees are now using the Special Valuation to avoid distributing to Plaintiffs the full value of their 401k accounts as of December 31, 2019.

134. The Special Valuation, as expressly stated in Michael Behan's March 25, 2020 memorandum was motivated in part by Plaintiffs' requests for distributions. See **EXHIBIT K**.

135. In declaring the Special Valuation, the Trustees sought to protect the value of their own 401k accounts and those of their family members.

136. In declaring the Special Valuation, the Trustees operated under a direct conflict of interest. It is in their individual financial interests to reduce Plaintiffs' 401k account distributions, to preserve funds in the Trust Funds for themselves, and to minimize the loss in value to their individual accounts.

137. As a result of the Trustees' breaches of fiduciary duties, Plaintiffs' have been damaged.

138. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs seek equitable restitution of the loss in value to their accounts caused by the Trustees' breaches of their fiduciary duties.

WHEREFORE, Plaintiffs Jeffrey Lipshires, Sara Donnelly and Anselmo Toni request that the Court enter judgment in their favor against Defendants and award attorney's fees, costs and such further relief as may be reasonable in the circumstances.

**THE PLAINTIFF DESIGNATES CATHERINE A. SHAGHALIAN #6883 AS TRIAL COUNSEL.**

Plaintiffs
By their attorney,


/s/ Catherine A. Shaghalian
Catherine A. Shaghalian, Esq. (#6883)
Orson and Brusini Ltd.
144 Wayland Avenue
Providence, RI 02906
T:  (401) 223-2100
F:  (401) 861-3103
cshaghalian@orsonandbrusini.com

Dated: June 8, 2020